GROSS, Judge.
We reverse appellant’s conviction for second degree murder because the trial court failed to explain excusable homicide as part of the manslaughter instruction. Well established supreme court precedent compels this result.
Appellant, Jose Perez shot and killed Juan Manriquez, his friend, brother-in-law and business partner. Perez invested approximately $9,000 in a food service business the two men had started. Dissatisfied with the way Manriquez was running the business, Perez wanted out. He claimed that although Manriquez agreed to return the $9,000, he never saw the money.
On the day of the shooting, Perez went to the site of the business to try and get the money. At trial, three witnesses and Perez *1191 gave differing accounts of the incident. The version most unflattering to Perez came from the victim’s wife, Diane Ortiz. She said that she saw Manriquez approach Perez saying something about “court.” She claimed that Perez reached behind his back and pulled out a gun. She testified that even though the victim put his hands into the air, Perez shot him.
The other eyewitnesses’s testimony contrasted with that of Ortiz, relating versions more supportive of a defense theory which would negate criminal responsibility. On the defense case, Perez sought to call Mary Colon as a witness. The state objected to her testimony as being irrelevant and prejudicial. The defense proffered the testimony. Colon said that she had spoken to Ortiz on the phone after Ortiz testified at trial. During that conversation, Ortiz told her that her testimony could have made it better for Perez, but that she did not do it because “he killed my husband and he’s going to have to pay for it.” Colon related that Ortiz said she knew that the shooting occurred in self defense, but that she did not care what happened, only that her husband was dead. Colon accused Ortiz of not seeing the shooting and Ortiz responded by stating that it did not matter what she saw since “he killed my husband and that’s all that matters.” The court sustained the state’s objection to Colon’s testimony.
The trial court did not hold a charge conference, but allowed the prosecution to submit proposed jury instructions. Perez did not object to any of the instructions. In reading the instructions to the jury, the court did not include the “Introduction to Homicide” portion of the standard instructions, beginning instead with the instruction on second degree murder. The court then gave the instruction on manslaughter, which included the following language:
However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide, which I’m going to define for you in just a moment.
Later, the court did instruct on the justifiable use of force likely to cause death, but it never included an instruction on excusable homicide.[1] After completing the instructions, the trial court asked, “Before the jury begins their deliberations, are there any additions, corrections, objections or instructions?” Defense counsel responded in the negative.
Appellant was convicted of second degree murder with a firearm, contrary to sections 775.087(2) and 782.04(2), Florida Statutes (1995). He was sentenced within the sentencing guidelines to thirteen years in the department of corrections, with a three-year mandatory minimum sentence.
Reversal is required under State v. Lucas, 645 So.2d 425 (Fla.1994), where the supreme court held that a complete instruction on manslaughter requires an explanation that justifiable and excusable homicide are excluded from the crime. Applicable to this case is the supreme court’s statement
that failure to give a complete instruction on manslaughter during the original jury charge is fundamental error which is not subject to harmless-error analysis where the defendant has been convicted of either manslaughter or a greater offense not more than one step removed, such as second-degree murder.
Id. at 427. Contrary to the state’s argument, a complete instruction on manslaughter re *1192 quires an explanation that both justifiable and excusable homicide are excluded from the crime; including just one or the other is not enough. Id.; see Cummings v. State, 648 So.2d 166 (Fla. 4th DCA 1994); Sales v. State, 621 So.2d 487 (Fla. 3d DCA 1993).
The state next argues that instruction on excusable homicide was unnecessary since the facts of the ease did not warrant it and the jury was “fully instructed upon Appellant’s proffered defense of self-defense.” In adopting the introductory homicide instruction, the supreme court rejected this fact based approach to the manslaughter instruction:
[W]e do not concur with the committee’s suggestion that no portion of the excusable homicide instruction need be read when it has no basis in the evidence. We say this because Florida case law has consistently held that manslaughter is a residual offense which cannot be properly defined without an explanation that justifiable homicide and excusable homicide are excluded from the crime, [citations omitted] Because a manslaughter instruction will have to be given in every homicide case, the instruction on excusable homicide will also have to be included.
Standard Jury Instructions-Criminal Cases No. 92-1, 603 So.2d 1176, 1176 (Fla.1992); Stallings v. State, 634 So.2d 784, 786 (Fla. 5th DCA 1994).
Because the failure to instruct on excusable homicide was fundamental error, the absence of an objection at trial does not preclude consideration of the issue on appeal. Lucas, 645 So.2d at 426-27; Rinaldi v. State, 614 So.2d 1197 (Fla. 2d DCA 1993). Defense counsel’s lack of objection at trial did not amount to an affirmative request for the instruction given that would amount to a waiver of the fundamental error under Armstrong v. State, 579 So.2d 734 (Fla.1991); see Nelson v. State, 679 So.2d 1249 (Fla. 4th DCA 1996); Ortiz v. State, 682 So.2d 217 (Fla. 5th DCA 1996); Blandon v. State, 657 So.2d 1198 (Fla. 5th DCA 1995); Stallings, 634 So.2d at 785-86.
We also find that the trial court erred in excluding the testimony of Mary Colon. Such evidence was admissible under section 90.608(l)(b), Florida Statutes (1995), as evidence of Ortiz’s bias. Parties should be afforded wide latitude in showing the nature and extent of a witness’s bias. See Spoerri v. State, 561 So.2d 604, 606 (Fla. 3d DCA 1990); Harmon v. State, 394 So.2d 121, 125 (Fla. 1st DCA 1980). The ability to expose an “improper impetus for a witness’ testimony is an essential component of the right to a jury trial.” Jones v. State, 678 So.2d 890, 892 (Fla. 4th DCA 1996). A jury should hear “[a]ny evidence which tends to establish that a witness is appearing for the State for any reason other than merely to tell the truth.” Holt v. State, 378 So.2d 106 (Fla. 5th DCA 1980).
The excluded testimony described Ortiz’s mindset which undercut the validity of her testimony. It is one thing for Ortiz to hate Perez for killing her husband; it is quite another for her to knowingly dissemble in court in order to see Perez convicted and her own sense of justice vindicated. Under these circumstances, we find the exclusion of Colon’s testimony to have been an abuse of discretion. See Jones, 678 So.2d at 892-93; Koon v. State, 513 So.2d 1253, 1256 (Fla.1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1124, 99 L.Ed.2d 284 (1988) (trial court properly permitted state to question defense witness about “an unflattering name” he had called the prosecutor).
REVERSED AND REMANDED.
POLEN and PARIENTE, JJ., concur.

.As contained in the "Introduction to Homicide” instruction not given in this case, the excusable homicide instruction reads:
The killing of a human being is excusable, and therefore lawful, under any one of the following three circumstances:
1. When the killing is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or
2. When the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or
3.When the killing is committed by accident and misfortune resulting from sudden combat, if a dangerous weapon is not used and the killing is not done in a cruel or unusual manner.
“Dangerous weapon" is any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm.
Fla. Std. Jury Instr. (Crim.) pp. 61-62.