901 So.2d 901 (2005)
Victor M. FRANCO, Petitioner,
v.
STATE of Florida, Respondent.
No. 4D04-1783.
District Court of Appeal of Florida, Fourth District.
April 20, 2005.
Rehearing Denied May 25, 2005.
Victor M. Franco, Avon Park, pro se.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for respondent.
PER CURIAM.
Victor Franco petitions for a writ of habeas corpus arguing that appellate counsel was ineffective in failing to raise an issue as fundamental error on direct appeal. We find that fundamental error did not occur in this case and that appellate counsel was not ineffective.
Franco was charged with four counts of attempted second degree murder with a firearm and proceeded to a jury trial. Franco claims that appellate counsel should have argued that the trial court committed fundamental error by failing to read the Introduction to Attempted Homicide jury instructions which contain instructions on justifiable and excusable homicide. Instructions on justifiable and excusable homicide were not given to the jury contemporaneously with the instructions on attempted second degree murder. The justifiable and excusable homicide instructions were given, however, when the court instructed the jury on manslaughter. Franco was convicted as charged of four counts of attempted second degree murder with a firearm.

PER SE FUNDAMENTAL ERROR?
Franco relies on a line of cases which could be read to hold that the failure to read the justifiable and excusable homicide jury instructions in all murder cases is per se fundamental error. Fletcher v. State, 828 So.2d 460, 461 (Fla. 5th DCA 2002); Richardson v. State, 818 So.2d 679 (Fla. 3d DCA 2002); Damoulakis v. State, 814 So.2d 1204 (Fla. 2d DCA 2002); Van Loan v. State, 736 So.2d 803, 804 (Fla. 2d DCA 1999), rev. denied, 791 So.2d 1103 (Fla.2001).
We read the Supreme Court of Florida's precedent, on which many of these cases *902 rely, differently. The line of cases suggesting this per se rule of fundamental error appears to originate with Blandon v. State, 657 So.2d 1198 (Fla. 5th DCA 1995).
In Blandon, the defendant drove his car at a police officer, striking him, as the police officer was firing shots at the defendant. The defendant was struck with several bullets but managed to escape. He was later arrested and convicted after jury trial of attempted murder of a law enforcement officer. Id. at 1199. On appeal, defendant argued that the trial court erred in failing to give the justifiable and excusable homicide jury instructions found in the Introduction to Homicide. Id. The standard jury instructions provide that the Introduction to Homicide instructions is to be read "in all murder and manslaughter cases." Fla. Std. Jury Instr. (Crim.) 7.1.[1]
The fifth district concluded that the failure to read the justifiable and excusable homicide instructions was fundamental error because "the jury [was] not fully instructed as to what constitutes lawful acts versus unlawful acts." Id. at 1199. The court stated that the Supreme Court of Florida had held that the justifiable and excusable homicide jury instructions must be read "in all murder and manslaughter cases." Id. (emphasis in original) (citing State v. Smith, 573 So.2d 306, 309-10 (Fla.1990), as supporting this proposition).
Reading Smith, we see that the supreme court's holding was not the broad categorical imperative that Blandon attributed to it. In Smith, the defendant had asserted a claim of self defense in shooting the victim because the victim was an alleged mafia figure who had attacked the defendant before and who the defendant had known to carry a gun. Id. at 309. At trial, the court read the short form of the justifiable and excusable homicide instructions but did not read the long form of the instructions contemporaneously with the instructions on manslaughter. Id. The defendant did not request the instructions and did not object to their omission.
The supreme court held that failure to give the justifiable and excusable homicide instructions contemporaneously with the manslaughter instructions was error. The court explained that manslaughter is a residual offense which is defined by what it is not[2]; therefore, a complete instruction on manslaughter requires an explanation that justifiable and excusable homicide are excluded from the crime. Id. at 310.
The supreme court cited its seminal case on the issue, Hedges v. State, 172 So.2d 824 (Fla.1965). The court's holding and reasoning were clearly based on the residual nature of the manslaughter offense. See also Miller v. State, 573 So.2d 337 (Fla.1991) (holding that failure to give complete instruction contemporaneously with manslaughter is fundamental error).
The Smith court also cited Rojas v. State, 552 So.2d 914 (Fla.1989), where the trial court had given the introductory instructions on justifiable and excusable homicide but did not repeat those instructions contemporaneously with the manslaughter instructions. Again, the court relied on the reasoning of Hedges and found that the failure to give a full instruction of manslaughter (fully defining what it is not) was error.
In State v. Lucas, 645 So.2d 425 (Fla.1994), the supreme court again clarified its position:
We have repeatedly recognized that because manslaughter is a "residual offense, *903 defined by reference to what it is not," a complete instruction on manslaughter requires an explanation that justifiable and excusable homicide are excluded from the crime.... The district court is correct that this case is controlled by our decisions in Rojas and Miller, which stand for the proposition that failure to give a complete instruction on manslaughter during the original jury charge is fundamental error which is not subject to harmless-error analysis where the defendant has been convicted of either manslaughter or a greater offense not more than one step removed, such as second-degree murder.
Id. at 427 (citation omitted)(emphasis added).
We are confident that the supreme court's mandate is that fundamental error necessarily occurs when the jury is not fully instructed on the residual offense of manslaughter. See also Standard Jury Instructions-Criminal Cases No. 92-1, 603 So.2d 1175, 1176 (Fla.1992) (disagreeing with the Committee on Standard Jury Instructions' recommendation, that the excusable homicide instruction need not be read when it has no basis in the evidence, because manslaughter is a residual offense defined by what it is not).
Our prior cases addressing this issue are consistent with this reading. Avila v. State, 745 So.2d 983 (Fla. 4th DCA 1999) (finding fundamental error where jury was not fully instructed on manslaughter); Thurston v. State, 762 So.2d 558 (Fla. 4th DCA 2000) (reversing conviction where the jury was not instructed on justifiable and excusable homicide at all and where the state conceded that this was fundamental error).
The supreme court has recently answered a certified question which suggests that the failure to give the justifiable and excusable homicide jury instructions is not per se fundamental error in all murder cases. Pena v. State, 901 So.2d 781, 2005 WL 425408 (Fla. Feb. 24, 2005).
In Pena, the defendant was charged with first degree drug distribution murder. § 782.04(1)(a)(3), Fla. Stat. (1999). Pena gave the victim drugs which the jury found caused the victim to die from a drug overdose. On appeal, Pena argued that the trial court committed fundamental error in refusing to instruct the jury on excusable or justifiable homicide even though the factual circumstances did not support any jury argument relying on the excusable or justifiable homicide instructions. Id. The second district rejected the claim but certified the question as one of great public importance.
The supreme court granted review and began its analysis of the issue by observing: "In order to constitute fundamental error, the error must affect the validity of the trial to the extent that the verdict would not have been the same if the error had not occurred. See State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)." Id. at 786. The court explained that the general rule is that the excusable and justifiable jury instructions must be given in all homicide trials "where manslaughter appears on the verdict form either as a charged or [as a] lesser offense." Id. The court once again explained that the instruction must be given because "manslaughter is a residual offense that can only be fully defined by exclusion of the properly explained defenses of excusable and justifiable homicide." Id.
The supreme court found that any error in Pena was harmless because Pena was convicted of first degree murder which was two or more degrees removed from the offense on which the jury was erroneously instructed (manslaughter).
The court noted:

*904 [I]n the factual context of this case, justifiable homicide and excusable homicide were not material issues. We agree with the district court that in this case the jury would have found nothing useful in these instructions in its determination of whether Pena was guilty of first-degree murder or the next lesser offense of second-degree murder.
Id.
In addition to the harmless error reasoning, i.e. first degree drug distribution murder was two degrees removed from manslaughter, the supreme court found that the factual circumstances of the case and the unusual form of felony murder involved distinguished Pena's case from the line of cases that find fundamental error. Id. at 787. Likewise, we find the factual circumstances of Franco's case distinguish it from the cases where fundamental error was found and hold that fundamental error did not occur in this case.

FRANCO'S CASE
At trial, the evidence showed that the four victims were driving home from a night club. The victims, several of whom were acquainted with Franco, including Franco's ex-girlfriend and another man, had seen Franco at the club that night. The victims did not have any disagreements or fights with Franco while at the club. Franco was seen sitting in the passenger seat of a red car as the victims were leaving. The red car, with Franco riding in the passenger seat, got behind the victims as they were on I-95 driving away from the club. The red car began passing the victims' car on the left. Franco was seen hanging out the window and fired what appeared from the pattern of bullet holes to be a semi-automatic firearm into the victims' car. The side of the victims' car was riddled with about thirteen bullet holes. Two of the victims were shot and seriously injured. Nothing at trial indicated that the victims had provoked or instigated the attack in any way. At trial, Franco asserted a misidentification defense. He did not make any jury argument that the shooting was excusable or justified. In postconviction proceedings, Franco continued to assert that the police had gotten the wrong guy and that counsel was ineffective in failing to call alibi witnesses. Franco has never identified any basis for a jury finding that the unprovoked shooting was justifiable or excusable in any way.
Nothing about Franco's case suggests that the shooting was justified or excusable. The failure to read the justifiable and excusable homicide instructions contemporaneously with the attempted second degree murder instructions was not fundamental error where the jury was fully instructed on the lesser offense of attempted manslaughter. The validity of the trial was not affected, and the verdict would have been the same even if the alleged error had not occurred. Excusable and justifiable homicide were not material issues. The jury would have found nothing useful in these instructions in determining whether Franco committed attempted second degree murder.
In this case, the jury was fully and properly instructed on the lesser offense of attempted voluntary manslaughter. The jury was clearly instructed that a justifiable or excusable attempted homicide was not attempted voluntary manslaughter. The justifiable and excusable homicide instructions were given with the attempted manslaughter instructions. The jury was afforded a full and fair opportunity to exercise its pardon power and refused to do so.
Considering the facts of this case, any error that may have occurred in not reading the justifiable and excusable homicide instructions when the jury was instructed *905 on attempted second degree murder was harmless beyond a reasonable doubt. Appellate counsel was not ineffective in failing to raise this issue as fundamental error on appeal. The petition is DENIED.
POLEN, GROSS and TAYLOR, JJ., concur.
NOTES
[1] In 1994, attempted homicide jury instructions were adopted which are substantially similar to the instructions at issue in Blandon. Fla. Std. Jury Instr. (Crim.) 6.1.
[2] The statutory definition of manslaughter provides that it is a killing "without lawful justification." § 782.07, Fla. Stat. (1995).